1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10  PHILLIP MARABLE and GISELA              CASE NO. 14cv1206-WQH-KSC
    MARABLE,
11                                          ORDER
                              Plaintiffs,
12            v.
13  UNITED STATES OF AMERICA and
    BAE SYSTEMS SAN DIEGO SHIP
14  REPAIR,
15                            Defendants.

16  HAYES, Judge:

17        The matter before the Court is the Findings of Fact and Conclusions of Law

    pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.
18
                                  **BACKGROUND**
19
          This is an action for personal injury and damages arising from an incident that
20
    occurred on August 30, 2012 on the USS Pinckney, a public vessel owned by
21
    Defendant United States of America, while it was undergoing repairs in the San Diego
22
    Harbor.  Plaintiff Phillip Marable, a ship repairman working on the USS Pinckney,
23
    sustained injuries after slipping on a ladder on the vessel.
24
          On May 13, 2014, Plaintiffs Phillip Marable and Gisela Marable initiated this
25
    action by filing a Complaint against Defendants United States of America ("United
26
    States")  and BAE Systems San Diego Ship Repair ("BAE Systems").  (ECF No. 1).
27
    Phillip Marable asserted a negligence cause of action under general maritime law
28
    against BAE Systems and a negligence cause of action pursuant to 33 U.S.C. § 905(b),

the Longshore and Harbor Workers' Compensation Act ("LHWCA"), against Defendant United States. Gisela Marable asserted a cause of action for loss of consortium against both Defendants. (ECF No. 1).

On July 14, 2014, Defendant United States filed an Answer and Cross-claim against BAE Systems for contribution and indemnity. (ECF No. 3).

On September 2, 2014, Defendant BAE Systems filed an Answer and Cross-claim against United States for contribution and indemnity. (ECF No. 6).

A bench trial took place on June 20-23 and 27, 2017. (ECF Nos. 85, 86, 89, 92, 101).

## FINDINGS OF FACT

The USS Pinckney ("the Vessel") is an Arleigh-Burke class guided missile destroyer of the United States Navy and public vessel owned by the United States. During a period between approximately mid-April and November 2012, the period of availability, the Vessel underwent repairs and maintenance while berthed at the 32nd Street Naval Base in San Diego. BAE Systems was the prime shipyard contractor during the period of availability responsible for the overall shipyard level maintenance. The Navy coordinated with BAE Systems through an intermediary, the Southwest Regional Maintenance Center ("SWRMC") to conduct repairs on the Vessel. SWRMC is a combination of active duty and civilian contractors working on behalf of the United States Navy. Ship's Force consists of the active duty, enlisted, and commissioned officers that serve full-time on the Pinckney. SWRMC, BAE Systems, and Ship's Force coordinated to perform the repairs on the Vessel. Safway Services, LLC ("Safway") was the scaffolding company that BAE Systems subcontracted to work on the Vessel during the period of availability.

As part of the repairs and maintenance to be performed on the Vessel, handrails on a number of ladders on the Vessel were to be removed for powder-coating. The Ship's Force was responsible for removing and providing the handrails to SWRMC for powder-coating. SWRMC would facilitate the powder-coating process and return the

handrails to Ship's Force. Ship's Force would reinstall the handrails on the Vessel. Lieutenant Christopher Brandt, the overall coordinator for the Ship's Force during the period of availability, testified that when Ship's Force removes a handrail, Ship's Force generally would notify SWRMC and BAE Systems about the removed handrail and inform them that a temporary handrail needed to be installed in its place. Brandt testified that the expectation of Ship's Force is that BAE Systems was responsible for putting a temporary handrail in place or taping off the ladder. BAE Systems was expected to conduct safety walk-throughs during the period of availability to identify and correct safety hazards. BAE Systems failed to conduct a number of safety walk-throughs in August of 2012 prior to the date Phillip Marable sustained his injuries. Darold Ellington, a gas-free safety tech in BAE System's employment, conducted a safety walk-through on August 22, 2012 and identified the incident ladder as missing a handrail but did not take any corrective action.

As part of its contractual obligations to the United States, BAE Systems must comply with NAVSEA Standard Item 009-07. NAVSEA Standard Item 009-07 states in part:

> 3.8 Accomplish a fire prevention and housekeeping inspection on a daily basis whenever work is in progress. The inspection shall be made jointly with the SUPERVISOR and the Commanding Officer's designated representative.
> 3.8.1 Submit one legible copy, in electronic media, of a written report of the discrepancies and corrective actions, using Attachment A, to the SUPERVISOR and the Commanding Officer's designated representative within 4 hours after completion of the inspection.

(Plaintiff Exhibit 35, NAVSEA Standard 009-07, Section 3.8).

Phillip Marable ("Marable") was employed by Safway as a scaffolding superintendent on the date of the incident. As of August 2012, Marable had been in the scaffolding trade for approximately thirty (30) years since his high school graduation. Over the span of thirty years, Marable worked as a general laborer, foreman, supervisor, estimator, and superintendent. Marable owned a scaffolding business for a period of time. Marable had spent a significant time performing scaffolding work in shipyards on naval and commercial vessels prior to August 2012.

On August 30, 2012, Marable was working on the Vessel in the course of his employment for Safway. Marable was injured when he slipped walking down the inclined ladder on the port side quarter deck on the 02 level of the Vessel. At the time of the incident, the ladder was missing its inboard handrail. The handrail had been removed by Ship's Force for the powder-coating process. The outboard handrail on the incident ladder remained in place. The incident ladder did not have any caution tape or temporary railing on the inboard side.

On the day of the incident, Marable used the incident ladder to access his work area. There were alternative routes by which Marable could access the work area. Marable testified that he observed that the ladder was missing a handrail but felt that he could safely climb the ladder. During his testimony, Marable was asked, "And at that time [prior to using the ladder], did you feel like you could safely get up the ladder?" Marable responded, "Yes, I did." (Marable TT, 188: 7-20). Marable testified that he does not recall exactly how he fell, but stated that his right foot slipped as he was walking down the stairs. Marable testified that he fell to the right and the inboard handrail was not there for him to grab. Marable testified that he injured his left knee in the fall. Marable testified that following his fall, he used the incident ladder again and still felt that the ladder was safe. On the same day, Marable reported the injury to Jonas Raymond Montalvo, a Safety Technician for BAE Systems at the time of the incident. Montalvo prepared an incident report which stated, "On August 30, 2012, at approximately 0815, Safway Scaffold employee slipped on a moist stairway descending from the 02 LVL portside. In an attempt not to fall, the employee reached out to grab the hand rail but it was missing and caught himself on the bulkhead preventing a fall to the 01 LVL. Initial reported as a near miss to BAE Systems Safety on August 30, 2012." (Plaintiff Exhibit 17). The incident report further stated that the cause of the incident was "moisture on stairway & missing handrail" and that Marable sustained an injury to his knee. (Plaintiff Exhibit 17). Montalvo testified that he obtained the information for his report from Marable, from a document from Safway, or from

visually observing that the handrail was missing. Marable went to urgent care to have his knee examined on the day of the incident.

In December 2012, Marable underwent a total left knee replacement surgery. Around two or three months after the knee replacement surgery, Marable returned to work on light duty. In October 2013, Marable underwent a revision surgery of his left knee replacement. Marable testified that during the time he was going through physical therapy after the second knee surgery, he began to suffer pain in his lower back and gait disturbance. Marable testified that he was referred to a spine specialist, Dr. Paul Kim. Marable began receiving treatment from Dr. Kenneth Romero, a doctor specializing in pain medicine, beginning in June 2014. Marable underwent a lumbar fusion surgery in November 2015. Marable underwent a second lumbar fusion surgery on January 13, 2017. Marable has not been medically cleared to return to work since the second surgery on his knee in October 2013. Marable and his wife, Gisela Marable, testified that although Marable's condition is improving, he remains in pain and the injuries have negatively impacted their previously active lifestyle and their relationship.

## CONCLUSIONS OF LAW

## I. Negligence Against the United States Under the Longshore and Harbor Workers' Compensation Act

This is an admiralty and maritime matter within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Public Vessels Act, 46 U.S.C. §§ 781-790, which incorporates the consistent provisions of the Suits in Admiralty Act, 46 U.S.C. §§ 30901, *et seq.*, provides a limited waiver of the United States' sovereign immunity from suit for certain maritime claims involving a public vessel, such as the USS Pinckney. Under the Public Vessels Act, an injured party has no greater claim against the United States than one would have against a private person under similar circumstances. 46 U.S.C. § 30903; *Canadian Aviator, Ltd. v. United States*, 324 U.S. 215, 228 (1945). Marable has asserted a cause of action against the United States for negligence pursuant to the Longshore and Harbor Workers' Compensation Act, 33

U.S.C. § 905(b). The parties have stipulated that liability against the United States shall be determined exclusively under 33 U.S.C. § 905(b). (ECF No. 83 at 26).

Section 905(b) of the LHWCA preserves a longshoreman's right to recover from a shipowner under a negligence cause of action. *See* 33 U.S.C. § 905(b); *Scindia Steam Nav. Co., Ltd. v. De Los Santos*, 451 U.S. 156, 165 (1981); *Murray v. Southern Route Maritime SA*, 870 F.3d 915, 918-19 (9th Cir. 2017). The duty of care delineated in *Scindia* as to longshoremen applies equally to repairmen. *Cook v. Exxon Shipping Co.*, 762 F.2d 750, 752 (9th Cir. 1985), *amended on reh'g*, 773 F.2d 1001 (9th Cir. 1985). In *Scindia Steam Navigation Company*, the Supreme Court established the duty of care applicable to an action under § 905(b). *Scindia Steam*, 451 U.S. at 166-67. The Supreme Court stated:

> [T]he vessel owes to the stevedore and his longshoremen employees the duty of exercising due care "under the circumstances." This duty extends at least to exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property, and to warning the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work . . . .The shipowner thus has a duty with respect to the condition of the ship's gear, equipment, tools, and work space to be used in the stevedoring operations; and if he fails at least to warn the stevedore of hidden danger which would have been known to him in the exercise of reasonable care, he has breached his duty and is liable if his negligence causes injury to a longshoreman. . . . It is also accepted that the vessel may be liable if it actively involves itself in the cargo operations and negligently injures a longshoreman or if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation.

*Id.* In cases following *Scindia Steam*, the Ninth Circuit Court of Appeals identified "five distinct aspects of that duty": (1) the turnover duty of safe condition; (2) the turnover duty to warn; (3) the active involvement duty; (4) the active control duty; and

(5) the intervention duty. *Bjaranson v. Botelho Shipping Corp., Manila*, 873 F.2d 1204, 1207 (9th Cir. 1989). The Supreme Court and the Ninth Circuit later characterized *Scindia* as "outlin[ing] three general duties shipowners owe to longshoremen" and construed the active involvement and active control duty together. *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 98 (1994); *Christensen v. Georgia-Pacific Corp.*, 279 F.3d 807, 812 (9th Cir. 2002) ("[T]he Supreme Court has limited the duties that a vessel owner owes to the stevedores working for him or her: the turnover duty, the active control duty, and the intervention duty. . . .).

In this case, Plaintiffs claimed that the active involvement duty is applicable and that Defendant United States violated its duty of reasonable care under the circumstances by removing the incident ladder's inboard handrails. (ECF No. 119 at 21). The United States contends that all aspects of the vessel owner's duty of reasonable care under the circumstances must be viewed in the context of an expert and experienced ship repair person. The United States further asserts that the missing handrail was not a breach of the active control duty regardless of whether the standard of care is viewed in light of a ship repair person or an expert and experienced ship repair person.[1]

The Court finds that the active involvement/control duty is applicable to this case because the United States was responsible for the removal of the inboard handrail on the incident ladder. The United States owed to Marable a duty of reasonable care under the circumstances with respect to the ladder. *See Howlett*, 512 U.S. at 98 ("The second duty, applicable once stevedoring operations have begun, provides that a shipowner must exercise reasonable care to prevent injuries to longshoremen in areas that remain under the 'active control of the vessel.'"). "The active control duty requires the vessel owner to act reasonably if it actively participates in the cargo operations, and to avoid exposing the stevedores to harm from hazards they may encounter in areas . . . under

---

[1] Defendant United States and Plaintiffs filed briefs regarding the applicable standard of care in the negligence action against the United States prior to the trial. (ECF Nos. 65, 68, 70).

the active control of the ship." *Christensen*, 279 F.3d at 812; *Howlett*, 512 U.S. at 98. The Court concludes that the duty of reasonable care under the circumstances must be viewed in the context of an "expert and experienced" ship repair person. *See*, *e.g.*, *Scindia Steam*, 451 U.S. at 166-67 ("This duty extends at least to exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property"); *Bjaranson*, 873 F.2d at 1208 (discussing the turnover duty and stating "the vessel must exercise ordinary care in light of the fact that the operation will be conducted by an 'expert and experienced' stevedore"); *Ludwig v. Pan Ocean Shipping Co., Ltd.*, 941 F.2d 849, 852 (9th Cir. 1991) (discussing the turnover duty and stating "A longshoreman is an expert who is required to be 'mindful' of hazards – not forgetful of them . . . . It is for this reason that the question whether an average reasonable person would be excused from forgetting about a hazard aboard ship is irrelevant when the issue is whether a longshoreman should be excused from forgetting such a hazard.").

At the time of Marable's alleged injury, the inboard handrail had been removed from the incident ladder for powder-coating. However, the outboard handrail on the incident ladder remained in place. Marable testified that he recognized that the incident ladder was missing one of its two handrails prior to using it. During his testimony, Marable was asked, "And at that time [prior to using the ladder], did you feel like you could safely get up the ladder?" Marable responded, "Yes, I did." (Marable TT, 188: 7-20). Marable testified that as superintendent he had the authority and responsibility to stop work if he identified an unsafe condition. Marable testified that he climbed the incident ladder both before and after his slip although he was aware of available alternate routes by which he could reach his work area. Marable testified that even after the slip, he "knew [the ladder] was safe." (Marable TT 238:19, 193-194). Further, Marable had thirty years of experience doing scaffolding work and had spent significant time working on vessels such as the USS Pinckney.

The United States provided testimony by expert witness James Dolan, a marine consultant. Dolan testified that "anybody working in our industry transiting walkways and watertight doors and anything else" should be able to safely "go up and down" the incident ladder as well as "determine whether it is safe to go up and down the ladder." (Dolan TT 503 at 14-18). Dolan testified that "any experienced ship person or shipyard or repair person should have been able to go down that ladder or up that ladder safely." (Dolan TT, 504:1-5). Dolan testified that it is common for experienced ship repairman to go up and down a ladder using one hand on a railing and that a ladder with one handrail removed would not be a safety hazard for the experienced ship repair person, like Marable.[2] The Court finds this expert testimony to be credible and persuasive.

The Court finds that the incident ladder with the missing inboard handrail did not create an unreasonably hazardous condition for an expert and experienced ship repair person such as Marable. Plaintiffs have not demonstrated by a preponderance of the evidence that Defendant United States breached its duty of reasonable care under the circumstances.

## II. Negligence Against BAE Under General Maritime Law

The parties have stipulated that liability against Defendant BAE is governed under general maritime law of negligence. (ECF No. 83 at 26-27). Work performed aboard a ship docked at a shipyard on navigable waters is within the jurisdiction of federal maritime law under 29 U.S.C. § 1331. *See Sisson v. Ruby*, 497 U.S. 358, 367 (1990). General maritime law recognizes the tort of negligence. *Norfolk Shipbuilding & Drydockk Corp. v. Garris*, 532 U.S. 811, 820 (2001). "To recover for negligence, a plaintiff must establish: (1) duty; (2) breach; (3) causation; and (4) damages." *Samuels v. Holland American Line-USA, Inc.*, 656 F.3d 948, 953 (9th Cir. 2011). The duty owed to a ship repairman in a general maritime action for negligence is the

---

[2] Plaintiffs provided expert testimony by Thomas Dyer who testified that the incident ladder with the missing inboard handrail was "hazardous." Dyer testified, "[T]here is two functions of the railings. One of them is one hand for yourself, but the other one is to keep from you falling off the side of the ladder if something goes wrong." (Dyer TT, 275:21-277:10).

ordinary negligence duty of reasonable care under the circumstances. *Peters v. Titan Nav. Co.*, 857 F.2d 1342 (9th Cir. 1988); *see also Weyerhauser Co. v. Atropos Island*, 777 F.2d 1344, 1347 (9th Cir. 1985) (finding the standard of "reasonable care under the circumstances" consistent with the standard "human skill and precaution, and a proper display of nautical skill."). "In maritime law, general principles of negligence law guide the federal courts." *Peters*, 857 F.2d at 1345 n.1.

Plaintiffs contend that under general maritime law, BAE Systems owed to Marable a duty of reasonable care under the circumstances. Plaintiffs contend that BAE Systems had a contractual duty of care under NAVSEA Standard 009-07 to perform daily safety walk-throughs every Monday through Friday during the availability period and to identify and remedy safety hazards. (ECF No. 119 at 25). Plaintiffs contend that BAE Systems breached its duty to put caution tape around the ladder to prevent expert and experienced workers from accessing the ladder. *Id.* at 26. Plaintiffs contend that BAE Systems failed to uphold its duty to correct the hazardous condition of the incident ladder after identifying that it was missing a handrail. *Id.*

BAE Systems contends that the negligence claim against BAE Systems is governed by general maritime law. BAE Systems contends that "the *Scindia* duties owed by a vessel owner to a longshoreman working on a vessel are instructive with respect to the duties owed by a ship repair contractor like BAE to a ship repair worker like Plaintiff." (ECF No. 118 at 11-12). BAE Systems contends that it did not breach its duty of care because the ladder with the missing handrail did not constitute an unreasonably dangerous hazard. *Id.* at 12-13. Further, BAE Systems contends that it did not have a duty to warn of or remedy the condition of the ladder because the missing inboard handrail constitutes an "open and obvious hazard." *Id.* at 14-15. BAE Systems contends that it does not owe Marable any contractual duty under NAVSEA Standard 009-07 because (1) Plaintiffs failed to plead a breach of contract cause of action against BAE or to allege that they were third-party beneficiaries under the contract between BAE and the U.S. Navy; (2) Plaintiffs did not raise the issue of breach of contractual

duty in the pretrial order or pretrial brief; and (3) Plaintiffs failed to demonstrate at trial that they were parties to the contract between BAE and the Navy or that they were intended third-party beneficiaries of the government contract. (ECF No. 124 at 16-17).

The Court concludes that BAE Systems did not owe Marable a contractual duty to identify and remedy the condition of the incident ladder with the missing inboard handrail under NAVSEA Standard 009-07. Plaintiffs cite section 3.8 of the NAVSEA Standard 009-07 as the basis of this contractual duty. This section states,

> 3.8 Accomplish a fire prevention and housekeeping inspection on a daily basis whenever work is in progress. The inspection shall be made jointly with the SUPERVISOR and the Commanding Officer's designated representative.
> 3.8.1 Submit one legible copy, in electronic media, of a written report of the discrepancies and corrective actions, using Attachment A, to the SUPERVISOR and the Commanding Officer's designated representative within 4 hours after completion of the inspection.

(Plaintiff Exhibit 35 at 9). Attachment A included within NAVSEA Standard 009-07 is the discrepancy and corrective action log listed in Section 3.8.1 and lists Type Codes for use in completing the log, including "12-Unguarded/Edges/Holes/Openings/Fall Protection." (Plaintiff Exhibit 35 at 11-12).

Plaintiffs have not satisfied their burden to establish a right to bring a claim premised on a provision in NAVSEA Standard 009-07. NAVSEA Standard 009-07 is incorporated into a contract between BAE Systems and the United States, through SWRMC. "[O]nly a party to a contract or an intended third-party beneficiary may sue to enforce the terms of a contract or obtain an appropriate remedy for breach." *GECCMC 2005-C1 Plummer St. Office Ltd. Partnership v. JPMorgan Chase Bank, Nat'l Assoc.*, 671 F.3d 1027, 1033 (9th Cir. 2012). "This is 'a comparatively difficult task': a party that benefits from a government contract is presumed to be an incidental beneficiary, and that presumption may not be overcome without showing 'a clear intent to the contrary.'" *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1160 (9th Cir. 2016) (citing *Cty. of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1244 (9th Cir. 2009)). "[A] putative third-party beneficiary must demonstrate an intent on the part of the contracting parties to 'grant [it] *enforceable* rights.'" *Id.* (citing *Orff v. United*

*States*, 358 F.3d 1137, 1147 (9th Cir. 2004)).  Plaintiffs have failed to provide evidence to establish that Marable is a party to or an intended third-party beneficiary to the contract incorporating the responsibilities set forth in NAVSEA Standard 009-07.

The Court concludes that BAE Systems owed to Marable "the ordinary negligence duty of reasonable care under the circumstances." *Peters*, 857 F.2d at 1344 (holding that the duty owed to a ship repairman in a general maritime action for negligence is the ordinary negligence duty of reasonable care under the circumstances).[3] On the day of the incident, the inboard handrail on the incident ladder had been removed.  The outboard handrail on the incident ladder remained in place.  Marable testified that he recognized that the incident ladder was missing one of its two handrails prior to using it and felt that it was safe.  During his testimony, Marable was asked, "And at that time [prior to using the ladder], did you feel like you could safely get up the ladder?"  Marable responded, "Yes, I did."  (Marable TT, 188: 7-20).  Marable had thirty years of experience doing scaffolding work and had spent significant time working on vessels such as the USS Pinckney.  Marable testified that as superintendent he had the authority and responsibility to stop work if he identified an unsafe condition.  Marable climbed the incident ladder both before and after his slip although he was aware of available alternate routes by which he could reach his work area.  Marable testified that even after the slip, he "knew [the ladder] was safe." (Marable TT 238:19, 193-194).  Further, expert witness James Dolan testified that it is common for experienced ship repairman to go up and down a ladder using one hand on a railing and that a ladder with one handrail removed would not be a safety hazard for the experienced ship repair person like Marable.  The Court concludes that the incident ladder with an outboard handrail in place did not constitute an unreasonably dangerous condition to an experienced ship repair person.

---

[3] Defendant BAE and Plaintiffs filed briefs regarding the applicable standard of care in the negligence action against the BAE prior to the trial.  (ECF Nos. 64, 67, 69).  Defendant BAE's "Motion Regarding the Appropriate Standard of Care" is granted in that this Order determines that BAE Systems owed a duty of reasonable care under the circumstances to Marable.  (ECF No. 64).

Further, the Ninth Circuit has held that "the limits of negligence liability in section 905 cases against a Vessel [are] instructive on the limits of negligence liability in suits against other defendants." *Peters*, 857 F.2d 1342, 1345 (9th Cir. 1988). In *Peters*, the Ninth Circuit Court of Appeals considered a similar negligence action by a ship repairman against a non-vessel defendant under general maritime law after the repairman suffered injuries while conducting repair work. *Id.* at 1343-45. The Court of Appeals applied § 905(b) case law that held that defendants were not liable where a plaintiff-ship repair person was injured by the condition he was hired to repair. *Id.* at 1345. In various negligence cases under the LHWCA, courts have held that vessel owners do not have a duty to warn of open and obvious conditions. *See Howlett*, 512 U.S. at 99-100 ("[T]he duty [to warn] attaches only to latent hazards, defined in this context as hazards that would be neither obvious to nor anticipated by a competent stevedore in the ordinary course of cargo operations."); *Ludwig*, 941 F.2d at 852 ("A shipowner may rely on the expertise of longshoremen and leave unremedied conditions that would otherwise be considered dangerous to less skilled persons."). In this case, Marable testified that he was aware of the missing inboard handrail on the incident ladder prior to using the ladder. The Court concludes that the missing inboard handrail on the incident ladder constituted an open and obvious condition. In light of *Peters* and the section 905(b) cases limiting liability for open and obvious conditions, the Court concludes that BAE did not have a duty to warn or remedy due to the open and obvious nature of the missing inboard handrail on the incident ladder.

The Court concludes that Plaintiffs did not prove by a preponderance of the evidence that the missing inboard handrail on the incident ladder created an unreasonably dangerous condition to an experienced ship repair person. The Court concludes that Defendant BAE Systems did not have any duty to warn Marable of the missing inboard handrail on the incident ladder or remedy the condition of the incident ladder. The Court finds that Plaintiffs have not demonstrated by a preponderance of the evidence that Defendant BAE Systems breached its duty of reasonable care under the

circumstances.

**III. Loss of Consortium**

Because the Court concludes that Defendants United States and BAE Systems are not liable to Plaintiffs for any act of negligence in relation to injuries sustained by Phillip Marable, Plaintiff Gisela Marable's cause of action for loss of consortium is dismissed. *See Hahn v. Mirda*, 54 Cal. Rptr. 3d 527, 531 (Ct. App. 2007) ("A cause of action for loss of consortium is, by its nature, dependent on the existence of a cause of action for tortious injury to a spouse. . . . [I]t stands or falls based on whether the spouse of the party alleging loss of consortium has suffered an actionable tortious injury."). Judgment shall be entered in favor of the United States and BAE Systems as to Plaintiffs' third cause of action.

**IV. Cross-Claims by BAE Systems and United States**

BAE Systems brings cross-claims for contribution and indemnity against the United States. (ECF No. 6 at 9-11). The United States also brings cross-claims for contribution and indemnity against BAE Systems. (ECF No. 3 at 12-15). These claims were predicated on the Court finding any liability on the part of either Defendant on the negligence causes of action. The Court has not found that either Defendant was negligent with respect to any duty owed to Phillip Marable under general maritime law or the LHWCA. Accordingly, the Court dismisses the United States' cross-claims for contribution and indemnity and Defendant BAE System's cross-claims for contribution and indemnity.

**CONCLUSION**

Plaintiffs have failed to establish by a preponderance of the evidence that they are entitled to prevail on the three causes of action alleged in the Complaint.

IT IS HEREBY ORDERED that the Clerk of Court shall enter judgment in favor of Defendants BAE Systems San Diego Ship Repair Inc. and United States and against Plaintiffs Phillip Marable and Gisela Marable as to all causes of action in the Complaint.

1    IT IS HEREBY ORDERED that the cross-claims for contribution and indemnity

2  by the United States and BAE Systems are dismissed.

3    IT IS FURTHER ORDERED that the Motion to Apply the Appropriate Standard

4  of Care filed by Defendant BAE Systems is granted. (ECF No. 64).

5  DATED: December 21, 2017

6

**WILLIAM Q. HAYES**
7  United States District Judge